```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                   EASTERN DIVISION
```

**RICHARD MASTERSON,**              )
                                    )
       Plaintiff,         )
                                    )
  v.                                )   No. 05 C 7210
                                    )
**ST. GEORGE UNLIMITED, INC.,**     )
**ROBERT N. RONINGEN, and**         )
**ROBERT MCCLUNG,**                 )
                                    )
       **Defendants.**     )

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard Masterson sued St. George Unlimited, Inc., Robert N. Roningen and Robert McClung for breach of contract, fraud, and violation of RICO, 18 U.S.C. sec. 1961.[1] Jurisdiction is based on the federal claim and diversity of citizenship. St. George failed to file an answer. Roningen (a lawyer) and McClung, filed pro se answers. While McClung disputes personal jurisdiction, by filing an answer he waived any objection on that ground. This court held a bench trial on the claims in February, 2008. This opinion constitutes my findings of fact and conclusions of law.

---

[1] Two other individuals were sued. Plaintiff was unsuccessful in serving them with summons.

This is a case of fraud. St. George[2] is a corporation run by the two individuals who evaded service in this case, Sam Podany and Judy Boss, who lived with Podany. Podany is a convicted felon. Roningen is a lawyer in Duluth, Minnesota who was friends with Podany. While Podany was in federal prison in Duluth, Roningen visited him, and there met another man, Daryl Ellis. After Ellis' release from prison, he came to Chicago. In Chicago, he somehow became connected with a Chicago alderman.

Masterson is a Chicago newspaper executive. He was formerly with the Chicago Tribune, where he was vice president in charge of circulation for entertainment products. He left to buy his own company, which owns newspapers in various suburbs. Masterson wanted to buy the Chicago Sun-Times. He met with the alderman and others at city hall in Chicago in 2004. Among those present was Ellis. Ellis stated that he was working with St. George, represented to be a non-profit organization with the ability to raise large amounts of money. Masterson agreed to work with Ellis and St. George to raise the money needed to buy the Sun-Times.

Masterson, Ellis and St. George executed an agreement on or about April 17, 2004. McClung signed the agreement on behalf of

---

[2] St. George apparently has at least two addresses. Exhibits in the case purporting to be from St. George list its address in St. Paul, Minnesota and Greenwood Village, Colorado. St. George's checks list its name as "St. George Unlimited, Inc. Concerns for Humanity." From the limited evidence before me, it appears to be nothing more than a scam operation.

St. George. The agreement stated that its purpose was to raise $500 million for media and related acquisitions, that St. George "owns certain substantial assets," has "relationships with funders and collateral providers," and "being a non-profit company qualifies for sophisticated European funding systems specifically designed to assist such companies." The agreement further stated that St. George was "willing to provide its assets, sources, and systems for use in developing the $500MM in funding." According to the agreement, Masterson would provide $150,000 for up-front costs involved in obtaining the money, including amounts that would not exceed $125,000 for a "conditional funding commitment from a valid funder," and $25,000 for "legal and due diligence fees." Masterson received his agreement from Ellis. Masterson was told that Roningen would hold the money in a trust account, and that none of it would be spent without prior authorization. Masterson thereafter forwarded $300,000 in April, 2004 to the trust account. He transferred another $150,000 in May, 2004. There is no explanation in the record as to why Masterson transferred $450,000 when the agreement only called for him to fund $150,000. In July, 2004, St. George sent Masterson a promissory note, signed by McClung on behalf of St. George, in which it stated that $375,000 would be repaid to Masterson on or before August 20, 2004.

Masterson says he had one conversation during this period with Roningen, and that he told him no money was to be disbursed without

3

his consent. Roningen gave a different story, saying Masterson said he didn't want to be bothered, and just to get Ellis' authorization. Credibility on this question is very close. On balance, from the lack of explanation, and written documentation, regarding the amounts over $150,000 sent to the trust account by Masterson, and the fact that Roningen apparently did not benefit from the money, I think it more likely than not that at that time Masterson did put his trust in Ellis, and as Roningen testified, informed Roningen that Ellis was his partner and to deal with Ellis. Masterson was at least careless with regard to the money, transferring $300,000 more than required by the only documentation in the record, and not requiring a written trust agreement[3], or written instructions about disbursements. The only explanation for this appears to be his trust in Ellis.

That trust was misplaced. The money was gone by June, 2004. Roningen's records show large wire transfers to Latvia, Georgia, California and New York City in amounts of $100,000 or more in May, 2004. A smaller amount went to a bank in Texas.

From May, 2004 until late in the year, Masterson communicated with Ellis. He says Ellis kept promising him that the funding was close. In late August, 2004, the auction for the Sun-Times was

---

[3] Attached to the complaint, but not introduced in evidence at the trial, is a document that purports to be an escrow agreement between Masterson and St. George, signed by Masterson but no one else. At any rate, the escrow agreement does not involve Roningen.

halted when Conrad Black was indicted, according to Masterson. Masterson says at that time he called Ellis and said since he was not going to be able to buy the newspaper he wanted his money back. Masterson contacted Roningen in October or November and found out the money was gone. Roningen and Boss came to Chicago in December, 2004. Boss told Masterson he would get his money back. He subsequently got back $57,000, which came from the sale of a home owned by McClung. The money for the purchase of that home apparently came out of Masterson's money. Following the meeting in Chicago, St. George, through Boss and perhaps others, sent Masterson various communications and documents, indicating that St. George was on the verge of raising millions of dollars, which would enable it to pay Masterson the money it admitted it owed, but none of these were actually funded.

McClung was listed as chief executive officer of St. George. In fact, he appears to have had little to do with the matter, but he slept on the floor of the Boss apartment/St. George office in St. Paul when he was in Minnesota and he knew that he was being represented as St. George's CEO. He also signed St. George papers on behalf of the company. He signed two documents in evidence, the business agreement and promissory note. McClung is a 68 year old retired former employee of the Minnesota legislature. No evidence was introduced as to why he was held out as the CEO of St. George.

5

The complaint in this case is brought in three counts. The first alleges that all of the defendants violated RICO. However, as I indicated when I denied summary judgment, while the actions of St. George and its principals are certainly suspect with regard to its general business dealings, Masterson has not attempted to prove either an enterprise or a pattern of racketeering activity, as required under the act. *Jennings v. Auto Meter Prods., Inc.,* 495 F.3d 466, 472 (7th Cir. 2007). Count 2 seeks judgment against St. George for breach of contract for failure to pay the amounts required under the promissory note. No defense to non-payment under that note has been offered. Judgment will be entered for Masterson on count 2 in the amount of $375,000 plus interest. Count 3 alleges fraud on the part of St. George, Roningen and McClung (as well as Boss and Podany). Under Illinois law, Masterson is required to prove a false statement of material fact, knowledge of the falsity, intent, reliance and damages. *Connick v. Suzuki Motor Co., Ltd.,* 174 Ill. 2d 482, 496 (Ill. 1996). Masterson has proved each of these elements as to St. George. He has not proved that Roningen knowingly participated in a fraud.[4] McClung knowingly allowed his name to be used by St. George in connection with its activities. He held himself out to be the

---

[4] During closing argument, Masterson argued that Roningen is at least liable for breach of fiduciary duty. He did not make such a claim in his complaint, however (nor did he ask to amend his complaint).

chief executive officer of this company.  While I do not think the evidence shows he actually knew of St. George's fraud, he had to know that large amounts of money were being transferred to St. George's principals from Masterson when Masterson did not know that he was a CEO in name only.  Beyond that, of course, he had to know that Masterson would find it material that a person who was being held out as the chief executive officer of a company was merely a puppet.  He is also guilty of fraud.

## Conclusion

For the reasons stated in this opinion, judgment will be entered in favor of Richard Masterson and against St. George Unlimited, Inc. and Robert McClung in the amount of $393,000, plus interest from August, 2005.  Punitive damages are appropriate against St. George Unlimited and are assessed in the amount of $75,000.

                                    **ENTER ORDER:**

                                    _____
                                    **Elaine E. Bucklo**
                                    United States District Judge

Dated:  April 23, 2008